[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM RE: APPLICATION OF PRE JUDGEMENT REMEDY #124
This is the plaintiffs' amended application for pre judgement remedy dated April 8, 1997, wherein they seek an attachment of unit 1B owned by the defendant, Muri Development Corporation ("Muri"). On July 21, 1995, the plaintiffs secured a judgement against the defendant, Arrowhead By The Lake, Inc. ("Arrowhead"), in the amount of $15,875.26. (Court Exhibit 1). The plaintiffs have subsequently been unable to satisfy that judgement and have brought the present action against Arrowhead, Muri and two of their stockholders, Fred Musano and Raymond Rinaldi, both in their individual capacity. It is the claim of the plaintiffs that the defendant transferred unit 1B from Arrowhead to Muri in an attempt to defraud creditors, including the plaintiffs, and that therefore the transfer was a fraudulent conveyance (counts one and two). In addition, the plaintiffs claim that the corporate veil of Muri should be pierced, as it has no separate identity but rather is merely the instrumentality or agent of Arrowhead.
There is no question that in December of 1990 Arrowhead owned numerous condominium units, including 1B, and was indebted to the Bank of Boston ("Bank"). At that time Rinaldi and Musano raised approximately $1,550,000.00 to pay off Arrowhead's debt to the Bank, formed a new corporation entitled Muri Development Corporation, and had that new corporation purchase the assets of Arrowhead. The result of that transaction was that Arrowhead was able to pay off its debt to the Bank. In conjunction with that payment, the other stockholders of Arrowhead were also bought out by either Muri, or Rinaldi and Musano. In any event, on December 14, 1990, the assets of Arrowhead, other than development rights, were transferred to Muri by warranty deeds signed by Andrew Ceccherini, the President of Arrowhead. One deed reciting consideration of $1,000,000.00 while the other deed cited consideration of $550,000.00. (Plaintiffs' Exhibit 1). Thereafter, on November 29, 1994, Arrowhead transferred garage development units to Muri for consideration of $1,500.00. It is CT Page 7779 the defendant's testimony that what was transferred was the right to construct the garages and that they were not constructed at the time of transfer. (Plaintiffs' Exhibit 5). On June 6, 1995, a corrective deed was placed on the land records in connection with the deeds of December 1990 and November 29, 1994. There was evidence presented that Arrowhead had a contract to sell the development rights to a Mr. Pasinati for $300,000.00 but that the plaintiffs from the present action instituted suit to enjoin that sale. The plaintiffs claim that the defendant's development rights have expired, that there are no tangible assets of Arrowhead that can satisfy the plaintiffs' judgement and that the defendants have not disclosed any such assets.
It is the plaintiffs' claim that under both § 52-275d (a) of the General Statutes and prior case law that they must only provide evidence that there is probable cause they will prevail on the merits of this case in order for this court to grant their request for a prejudgment remedy. Tyler v. Schnabel,34 Conn. App. 216, 219, 64; A.2d (1994). In other words, the court need not determine that the plaintiffs will prevail, but merely that they will probably prevail. The court agrees that this is the proper test but does not believe that the plaintiffs have sustained their burden in this respect.
The first question which the court must address is whether the 1990 transfer from Arrowhead to Muri was a fraudulent one which should be set aside. If the answer to that question is no, then the court must determine whether the corporate veil of Muri should be pierced so that unit 1B can be considered the assets of Arrowhead and would thus be subject to attachment by the plaintiffs.
The plaintiffs first argue that the 1990 conveyance from Arrowhead to Muri was fraudulent under § 52-552 of the General Statutes. The plaintiffs, however, have not proven either that the transaction was made without adequate consideration or that it was made with fraudulent intent. Tyers v. Coma,214 Conn. 8, 11, 570 A.2d 186 (1390); Tyler v. Schnabel, supra,34 Conn. App. 221. To the contrary, the court accepts the testimony of the defendants that they paid $1,550,000.00 for a majority of the assets of Arrowhead and that they formed a new corporation, Muri, to take title to those assets. Such a transaction in and of itself is not fraudulent, and in fact is a common occurrence. The court notes that there was no testimony that at the time this was done there were any debts or creditors of Arrowhead that the CT Page 7780 defendants were attempting to evade.
The court also does not accept the plaintiffs' argument that the June 1995 deed was really the effective deed transferring title and that since at that time there was a judgement in existence, the transfer was fraudulent. The June 1995 deed was clearly a corrective deed. No conveyance tax was paid and the deed clearly stated that it was corrective.
The plaintiffs' next argument is that the transfer of the garage development rights by the November 1994 deed was fraudulent. Though more persuasive than their previous arguments, this argument still fails. The plaintiffs are not attempting to set aside the transfer of the any of the garages transferred by that deed, but rather are attempting to set aside the transfer of unit 1B, which was transferred by the 1990 deed. Additionally, the plaintiffs are barred from setting aside the 1990 transfer by the statute of limitations. See General Statutes § 52-577. The plaintiffs readily admit in their brief that our courts have not permitted a tolling of the statute of limitations "under the circumstances of this case," but suggest that the statute of limitations should run from the time the creditors claim was reduced to judgement. The court cannot agree with such an assertion, especially when there has been nothing offered by the plaintiffs to show that the 1990 transfer was transacted for fraudulent reasons.
Since the court finds that there is no evidence of fraud on part of the defendants, the critical issue in this motion is therefore whether there is the absence of a separate identity with respect to Muri which would permit the plaintiffs to pierce Muri's corporate veil and attach unit 1B. "A court may pierce the corporate veil only under exceptional circumstances . . ." UnitedElectrical Contractors, Inc. v. Progress Builders, Inc.,26 Conn. App. 749, 755, 603 A.2d 1190 (1992). Under the "identity rule," as set out in United Electrical Contractors. Inc. v. ProgressBuilders. Inc., supra, 26 Conn. App. 756, citing Zaist v. Olsen,154 Conn. 563, 576, 227 A.2d 562 (1962), the plaintiffs must show that "the independence of the corporation had in effect ceased or had never begun and that an adherence to the fiction of separate identity would serve only to defeat justice and equity . . ." (Emphasis added) Id., 756.
In the present case, the plaintiffs presented sufficient evidence to show that Musano and Rinaldi controlled both CT Page 7781 corporations after the transfers of substantially all of Arrowhead's assets to Muri in 1990. Additionally, it was shown that Musano and Rinaldi advanced monies to the corporations when they felt it served their purposes. The question, however, is whether they controlled these entities with the intent to defraud others, including the plaintiffs, such that to respect the integrity of the corporate form would defeat justice and equity. The fact that Musano and Rinaldi were unwilling to advance monies to Arrowhead to pay the judgement of the plaintiffs does not mean that it was wrong or fraudulent when they advanced monies to Arrowhead to pay other bills. It is obvious that Musano and Rinaldi were unwilling to use their funds to pay off the mortgage liabilities of Arrowhead by transferring the funds directly to Arrowhead. They chose instead to purchase the assets of Arrowhead without the liabilities, which is done every day in the business world.
The plaintiffs' argument that the amount paid for these assets may not have been equivalent to their fair market value is also not persuasive. There was no evidence presented by the plaintiffs to show that the amount paid was less than fair market value. As far as the court can determine, the amount paid could have easily been more than the fair market value of the items purchased. The plaintiffs have failed to present evidence as to the value of the assets transferred, and as a result the court will not, and indeed cannot, speculate as to their value. SeeAnderson v. Schieffer, Superior Court, judicial district of Waterbury, Docket No. 088553 (May 19, 1992, Healey, S.T.R.) (court, cannot speculate as to the reasonable value of work done in the absence of evidence).
In any event, the plaintiffs allege in paragraph 4 of their motion that the "defendants have previously fraudulently transferred with the intent to hinder, delay or. defraud creditors of Arrowhead." That allegation, if proven, is a critical element in connection with the count seeking to pierce the corporate veil. As it is commonly accepted, for the court to pierce the corporate veil it must find that the corporations were virtually "identical" and that the sham was used to perpetrate some illegal or fraudulent purpose. See Angelo Tomasso. Inc. v.Armor Construction Paving. Inc., 187 Conn. 544, 554,447 A.2d 406 (1982). However, other than the evidence that Arrowhead had no cash to satisfy the plaintiffs' judgment, and that Musano and Rinaldi refused to advance monies to pay that judgment, there is no evidence that the corporations were being used to defraud CT Page 7782 anyone, including the plaintiffs. The court does not find that the conveyance of the assets to Muri was done for a fraudulent purpose. The plaintiffs argue is their brief that "a key element in establishing fraudulent intent is arrived at by the individual Defendants' own admission that they created Muri Development corporation to protect the money they put up to pay off the Bank of Boston loan in 1990. The court finds nothing nefarious in attempting to shield assets purchased from another corporation. As stated previously, such a procedure is common in the business world. As a result, the court does not find that the defendants participated in a fraudulent conveyance or fraudulent activity which should be the basis for piercing the corporate veil.
Finally, the court is not convinced that Arrowhead is without assets to satisfy the plaintiffs' judgement. There was testimony that there are development rights which Arrowhead may own, though that testimony was disputed by the present association and the plaintiffs. If true, it seems somewhat incongruous that the plaintiffs, who have indicated to the court that Arrowhead is without assets, is at the same time attempting to thwart Arrowhead's attempt to sell an asset which might provide the funds necessary to satisfy their judgement.
For the reasons set forth above, the court does not find that the plaintiffs have established probable cause for sustaining their motion for a prejudgment remedy. Accordingly, the plaintiffs' motion to attach unit 1B owned by the defendant Muri is denied.
PELLEGRINO, J.